UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA FERNANDA ROSO FAJARDO, | Case No. 1:25-cv-1842-JDP |
| Petitioner, | |
| v. | ORDER |
| TIMOTHY S. ROBBINS, *et al.*, | |
| Respondents. | |

Maria Fernanda Roso Fajardo, an asylum applicant previously paroled into the United States and subsequently arrested and re-detained, seeks immediate release from ICE detention, arguing that her re-detention without a hearing violates the Fifth Amendment's Due Process Clause. She seeks a writ of habeas corpus under 28 U.S.C. § 2241 and has filed a motion for a temporary restraining order. The court finds that petitioner is likely to succeed on the merits of her petition and, for the reasons below, grants her motion for a temporary restraining order.

**Background**

Petitioner is a 31-year-old asylum seeker from Colombia. ECF No. 2-2 at 9. On January 19, 2023, she swam across the Rio Grande River and entered the United States near Eagle Pass, Texas. *Id.* On January 20, 2023, asylum officers interviewed petitioner and provided her with a Notice and Order of expedited removal pursuant to 8 U.S.C. § 1225(b)(1). *Id.* at 8-13. During that interview, petitioner told officers that she feared persecution or torture if she returned to

1

1   Colombia. *Id.* Immigration officials referred her for a credible fear interview, which an asylum
2   officer conducted on February 3, 2023. *Id.* at 15.  In that interview, she said that she had been
3   raped, sexually assaulted, beaten, stabbed, and threatened with death by her ex-partner in
4   Colombia. *Id.* at 25-34.  When the officer asked whether she feared returning to Colombia, she
5   said she feared that her ex-partner would kill her and that the police would let him get away with
6   it. *Id.* at 29.  Petitioner also told the officer that guerillas had killed her mother's husband and
7   displaced her family from their home when she was a child. *Id.* at 28.  Following the interview,
8   the asylum officer found that petitioner had a credible fear of torture if she returned to Colombia.
9   *Id.* at 35.
10        Immigration officials placed petitioner in removal proceedings under 8 U.S.C. § 1229(a)
11  and served her with a notice to appear in immigration court. *Id.* at 37-38.  Petitioner was released
12  from detention on humanitarian parole on February 18, 2023, pursuant to 8 U.S.C.
13  § 1182(d)(5)(A). *Id.* at 2, 37.  She was given an interim notice authorizing parole, which stated
14  that her parole was "valid for one year" and was set to "automatically terminate upon [her]
15  departure or removal from the United States or at the end of the one-year period" unless
16  otherwise extended. *Id.* at 37.  Her release was conditioned on her compliance with the terms and
17  conditions of her parole, including reporting for "every scheduled hearing before the immigration
18  court and every appointment as directed by ICE." *Id.*
19        Upon her release, petitioner was required to enroll in the Intensive Supervision
20  Appearance Program ("ISAP"), which is used by ICE to monitor certain non-citizens released
21  from custody. *Id.* at 2.  ICE provided her a cell phone equipped with an ISAP monitoring
22  application, which officials used to send her instructions for reporting for both remote—via either
23  video or still selfie—and in-person check-ins. *Id.* at 3.  She complied with all check-in
24  requirements except on two occasions—on May 6, 2025, and October 1, 2025—when she failed
25  to timely submit a selfie through the ISAP application. *Id.* at 4.  In both instances, after realizing
26  her mistake, petitioner submitted the selfie the next day. *Id.*
27        On November 19, 2025, ICE notified petitioner that she was to appear for an in-person
28  check-in at the ISAP field office in San Jose. *Id.* at 5.  When she arrived the following day for the

check-in, she was arrested. *Id.* She has been detained ever since. *Id.*

Since her arrival in the United States, petitioner has applied for asylum, worked as a delivery driver and an event staffer at weddings and parties, attended church on Sundays, and has taken English language classes at an adult school. She is engaged to be married in August 2026. *Id.* at 5.

**Procedural History**

On December 14, 2025, petitioner filed a petition for habeas corpus, ECF No. 1, and a motion for a temporary restraining order, ECF No. 2. Petitioner argues that the Due Process Clause of the Fifth Amendment requires that she be provided with notice and a hearing before being re-detained. *See generally id.* Judge Drozd issued an order on December 15, 2025, ordering respondents not to remove petitioner from the Eastern District of California. ECF No. 7. He also ordered respondents to file an opposition to petitioner's TRO that addressed "whether any provision of law or fact in this case would distinguish it from this court's decision in *Rocha Chavarria v. Chestnut*, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025), and other similar cases previously decided by this court, or otherwise indicate that the matter is not substantively distinguishable." *Id.* Respondents timely filed an opposition, ECF No. 9, and petitioner filed a reply, ECF No. 10. All parties consented to magistrate judge jurisdiction, and the matter was reassigned to the undersigned on December 17, 2025. ECF No. 14.

**Legal Standard**

A temporary restraining order, as with any preliminary injunctive relief, is an extraordinary remedy that is not awarded as of right. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The standards governing temporary restraining orders are "substantially similar" to those governing preliminary injunctions. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). To obtain injunctive relief, petitioner must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in her favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. Although the court must consider all four *Winter* factors, the first factor—

3

likelihood of success on the merits—is the most important. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

**Analysis**

Petitioner's motion for a temporary restraining order is an emergency motion for preliminary injunctive relief, and the court has tried to address it quickly. This order considers whether petitioner has a "fair chance of success on the merits"; it is not intended as the court's final word on the issues presented. *See Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988). After review of the *Winter* factors, the court finds that petitioner has carried her burden, and a temporary restraining order will issue.

**I.  Likelihood of Success of the Merits**

Petitioner argues that she is likely to succeed on the merits of her claim that respondents violated her due process rights by re-detaining her without notice and a hearing. ECF No. 2 at 7-13. The relevant statutory framework merits discussion, since it is the basis for respondents' argument. The parties agree that, immediately following her arrival in the United States, petitioner was detained under 8 U.S.C. § 1225(b). ECF No. 2 at 11; ECF No. 9 at 2. Under 8 U.S.C. § 1225(b)(1), "if an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible . . . , the officer shall order the alien removed from the United States without further hearing." 8 U.S.C. § 1225(b)(1)(A)(i). However, if the applicant "indicates either an intention to apply for asylum . . . or a fear of persecution, the [immigration] officer shall refer the alien for an interview by an asylum officer." 8 U.S.C. § 1225(b)(1)(A)(i)-(ii). If the asylum officer determines "that an alien has a credible fear of persecution . . . , the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § (b)(1)(B)(ii).

There is only one exception to § 1225's mandatory detention: a non-citizen can be paroled into the United States "'for urgent humanitarian reasons' or 'significant public benefit,' provided the [non-citizen] present[s] neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5); *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). "Release [necessarily] reflects a determination by the government that the noncitizen is not a danger to the community or a flight

1   risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia*
2   *for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

3   Here, the parties agree that petitioner fell into this exception. There is also no dispute that
4   petitioner was released and paroled pursuant to 8 U.S.C. § 1182(d)(5), which necessarily required
5   an immigration officer to conclude that she posed neither "a security risk nor a risk of
6   absconding." 8 C.F.R. § 212.5(b). The dispute concerns petitioner's re-detention, which
7   respondents argue is authorized by § 1225. In contrast, in petitioner's view, even if § 1225 were
8   to apply, her re-detention violates her constitutional due process rights.

9   Notably, the government has offered little to rebut petitioner's due process claim.
10  Respondents merely assert that petitioner's "detention aligns with due process." ECF No. 9 at 4.
11  Also notably, the government concedes that "the instant case is not substantively distinguishable
12  from [the] decision in *Rocha Chavarria v. Chestnut*"—a case in which a court recently found that
13  the petitioner had demonstrated a likelihood of success on the merits of his procedural due
14  process claim because (1) he had demonstrated a liberty interest in his continued release, and
15  (2) that his continued detention without written notice and a hearing was unlawful. *Rocha*
16  *Chavarria v. Chestnut*, No. 1:25-cv-1755-DAD-AC, 2025 WL 3533606, *5 (E.D. Cal. Dec. 9,
17  2025).

18  Courts analyze procedural due process claims in two steps: first, we consider whether
19  there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate
20  what procedures are necessary to ensure that any deprivation of that protected liberty interest
21  accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454,
22  460 (1989). The court considers each in turn.

23  To determine whether a specific conditional release rises to the level of a protected liberty
24  interest, courts have compared "specific conditional release in the case before them with the
25  liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."
26  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and
27  citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal
28  conviction "enables [the parolee] to do a wide range of things open to persons" who have never

5

been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that non-citizens paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5) acquire a liberty interest in their continued release. *See, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'") (quoting *Morrissey*, 408 U.S. at 482); *Omer G.G. v. Kaiser*, No. 1:25-cv-1471-KES-SAB (HC), 2025 WL 3254999, at *5, 9 (E.D. Cal. Nov. 22, 2025) (finding that the petitioner was entitled to a post-deprivation bond hearing after he was initially released pursuant to § 1182(d)(5)(A) and later re-detained).

This court agrees with the bulk of other courts that have considered the issues here presented, and holds that petitioner is likely to show that she has a liberty interest in her continued release. Where, as here, the government has found that petitioner is not a flight risk or a danger to the community and has released her pursuant to specific conditions, petitioner will likely succeed in showing that she has a liberty interest in continued release.

Immigration officials released petitioner on February 18, 2023, based on humanitarian parole. She has been allowed to live in the United States, subject to ICE supervision, but outside of custody, for over two years. During that time, petitioner has formed "enduring attachments of

1  normal life" while living in the United States; she has become an active member of her
2  community and has been gainfully employed. *See Morrissey*, 408 U.S. at 482. The court finds
3  that petitioner's initial release and time out of custody likely created a constitutionally protective
4  liberty interest in her continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL,
5  2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that
6  arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega*
7  *v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting
8  cases finding that non-citizens who have been released have a strong liberty interest).
9      Once a court has found that a non-citizen has a liberty interest in continued release, the
10 court must next determine what procedural protections the government must afford the non-
11 citizen before depriving her of that liberty interest. This requires balancing the factors laid out in
12 *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993
13 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).
14     The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

19 *Mathews*, 424 U.S. at 335.
20     Here, petitioner has a significant private interest in her continued release. "Freedom from
21 imprisonment—from government custody, detention, or other forms of physical restraint—lies at
22 the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678,
23 690 (2001). Petitioner had been released in the United States under the supervision of ICE for
24 over two years prior to her re-detention. During that time, she applied for asylum, worked
25 multiple jobs, took English language classes, attended her local church, and built a life with her
26 fiancé. ECF No. 2-2 at 5. Her community ties also support her private liberty interest. *See*
27 *Salazar v. Casey*, No. 25-cv-2784-JLS (VET), 2025 WL 3063629, at *4 ("Petitioner has an
28 interest in remaining with her family, seeking counseling, and attending hearings to seek a visa.");

*Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high, considering that petitioner's parole was terminated without written notice or a hearing. *See* ECF No. 2-2 at 5; *Salazar*, 2025 WL 3063629, at *4 (noting that there was no evidence that the petitioner presented a danger to the community or a flight risk). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Omer G.G.*, 2025 WL 3254999, at *7 (quoting *Zadvydas*, 533 U.S. at 690). Here, petitioner's initial release involved a determination that she posed neither a danger to public safety nor a flight risk. *See* 8 C.F.R. § 212.5(b); *Noori*, 2025 WL 2800149, at *3. Respondents do not argue that petitioner is now a danger to public safety or a flight risk; they provide no explanation for her re-detention. *See* ECF No. 9. "Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondents offer no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-arrest; more generally, they give the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty. *See id.*

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'" *Salazar*, 2025 WL 3063629, at *5. Indeed, the government has provided no information detailing the additional burdens, if any, that would result from providing additional procedural safeguards.

On balance, an initial weighing of the *Mathews* factors strongly indicates that petitioner was entitled to notice and an opportunity to be heard before re-detention. Accordingly, petitioner has demonstrated that she is likely to succeed on the merits of her Fifth Amendment Due Process claim.

## II. Irreparable Harm

The court finds that petitioner has shown that she will suffer irreparable harm absent a temporary restraining order. The Court of Appeals has recognized that anyone subject to immigration detention is exposed to irreparable harms. *See Hernandez*, 872 F.3d at 995 ("The briefs of amici curiae highlight in more concrete terms the irreparable harms imposed on anyone subject to immigration detention (or other forms of imprisonment)."); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").

## III. Balance of Equities and the Public Interest

Where the government is a party, the last two *Winter* factors are considered together. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). These factors weigh in favor of petitioner. First, the Court of Appeals has stated that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022); *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action."). Second, the government has not shown that, if petitioner were released, she would pose a danger to the community or a flight risk.

## IV. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). However, the "court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Accordingly, the court will not require petitioner to provide security.

**Conclusion**

Based on the foregoing, the court finds that petitioner is likely to succeed on the merits of her Fifth Amendment Due Process claim. Respondents likely violated her due process rights by re-detaining her without first having conducted a pre-deprivation hearing before a neutral adjudicator to consider whether she is a flight risk or danger to the community. The temporary restraining order will issue. If respondents seek to re-detain petitioner, they must first provide her with written notice and a hearing before a neutral adjudicator.

Accordingly, it is hereby ORDERED that:

1. Petitioner's motion for temporary restraining order, ECF No. 2, is GRANTED.

2. Respondents are ordered to immediately release petitioner from their custody under conditions no stricter than those to which she was subject to prior to her November 20, 2025 detention.

3. Respondents are enjoined and restrained from re-detaining petitioner, absent exigent circumstances, without first providing petitioner with written notice and a pre-detention hearing before a neutral adjudicator.

4. The parties are directed to submit a joint status report within ten days addressing the parties' expectations regarding future proceedings in this action. The joint status report should address, at minimum, whether the petition is now moot. If appropriate, the status report should also provide a proposed date for respondents to file an answer to the petition and should outline any anticipated motion practice.

IT IS SO ORDERED.

Dated:   December 18, 2025                  _____
                                            JEREMY D. PETERSON
                                            UNITED STATES MAGISTRATE JUDGE